IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jerome Myers, #258396,<br><br>               Petitioner,<br><br>     vs.<br><br>Gregory Knowlin, Warden of<br>Turbeville Correctional Institution,<br><br>               Respondent. | Civil Action No. 6:09-1076-CMC-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

        The record reveals the petitioner is currently confined in the Turbeville Correctional Institution of the South Carolina Department of Corrections ("SCDC") as the result of his Richland County conviction and sentence. The Richland County Grand Jury indicted the petitioner at the December 2002 term of court for criminal sexual conduct (CSC) in the first degree (02-GS-40-05319) and kidnaping (02-GS-40-05318). Attorney Jason Thomas King represented him on these charges. On April 21, 2003, he received a jury trial before the Honorable James R. Barber, III. The jury found him guilty as charged, and Judge Barber imposed a sentence of 12 years imprisonment, concurrent, for each

offense. This sentence was ordered to run consecutively to the petitioner's probation revocation sentence of three years imprisonment on 99-GS-43-809 that was imposed at the same sentencing hearing.[1]

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Aileen P. Clare represented him on appeal. On June 18, 2004, the petitioner filed his final brief of appellant, in which he presented the following issue for review:

> Did the lower court abuse its discretion by not permitting appellant to impeach the complaining witness with her history of making false allegations of sexual assault?

The State filed a final brief of respondent on June 30, 2004. Senior Assistant Attorney General Norman Mark Rapoport represented the State on appeal.

On February 7, 2005, the South Carolina Court of Appeals affirmed the petitioner's convictions and sentence in a *per curiam* opinion. *State v. Jerome Myers,* 05-UP-088 (S.C. Ct.App, Feb. 7, 2005). It sent the remittitur to the Richland County Clerk of Court on February 23, 2005.

The petitioner filed a *pro se* post-conviction relief (PCR) application (05-CP-40-1519) on April 5, 2005, in which he raised the following grounds for relief:

(1)     Ineffective assistance of counsel in that:

      a      Counsel failed to object to the wording of the indictment;
      b.     Counsel failed to prepare a defense/ offer any evidence of a defense;
      c.     Counsel failed to suppress the photo identification as prejudicial;
      d.     Counsel failed to object to bolstering and vouching of the victim;
      e.     Counsel failed to impeach or discredit the witness with two prior allegations of rape;

---

[1]Judge Barber also ordered the petitioner to pay applicable costs and assessments for each sentence, and to pay $ 100.00 on each of the surcharges within 90 days of his release from SCDC. The petitioner was given credit for 307 days of time served.

<blockquote>
f.    Counsel failed to object to the fingerprint analysis; and

g.    Counsel failed to object to withholding valuable DNA evidence.

(2)    Newly-discovered evidence.
</blockquote>

The State filed its return on January 6, 2006. It filed an amended return on June 8, 2006.

The Honorable William P. Keesley held an evidentiary hearing into the matter on April 18, 2007, at the Richland County Courthouse. The petitioner was present at the hearing and represented by attorney Charlie J. Johnson, Jr. Assistant Attorney General Robert L. Brown represented the State. The petitioner testified on his own behalf at the hearing, while the State presented the testimony of trial counsel, Mr. King.

On June 14, 2007, Judge Keesley filed a partial order of dismissal denying relief and dismissing the application with prejudice on the ineffective assistance of counsel allegations raised by the petitioner. The order did not address the petitioner's contention that he was entitled to a new trial based upon after-discovered evidence. The order specifically addressed the petitioner's claims that trial counsel was ineffective because he (1) failed to object to the wording of the indictment; (2) failed to prepare a defense or offer any evidence of a defense; (3) failed to suppress the photo identification as prejudicial; (4) failed to object to bolstering and vouching of the victim; (5) failed to impeach or discredit the witness with two prior false allegations of rape; (6) failed to object to the fingerprint analysis; (7) failed to object to withholding valuable DNA evidence; and (8) failed to request a lesser-included offense of assault and battery of a high and aggravated nature (ABHAN).

The Honorable J. Michelle Childs held an evidentiary hearing into the after-discovered evidence claim on June 7, 2007, at the Richland County Courthouse. The petitioner was present at the hearing and Mr. Johnson again represented him. Assistant Attorney General Brown again represented the respondent. Amos Jones was the only witness at this hearing. On July 27, 2007, Judge Childs filed an order of dismissal, in which

she denied relief and dismissed the application with prejudice, on the petitioner's contention that he was entitled to a new trial based upon after-discovered evidence.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Robert M. Pachak represented him in collateral appellate proceedings. On March 18, 2008, Mr. Pachak filed a *Johnson* petition for writ of certiorari[2] on the petitioner's behalf and petitioned to be relieved as counsel. The only question presented in the *Johnson* petition was stated as follows:

> Whether defense counsel was ineffective in failing to request a jury instruction on the lesser-included offense of assault and battery of a high and aggravated nature?

The petitioner subsequently filed "Petitioner's Pro Se Brief for Writ of Certiorari," in response to the *Johnson* petition. The petitioner's brief presented the following issues for review:

> (1) Trial counsel was ineffective for [failing] to object to the improper wording of the indictment. ... [T]rial counsel was further ineffective for [failing] to request that the trial judge charge the jury with the lesser-included offense, that being ABHAN, after both the trial and solicitor had noticed that the wording for the indictment was improper for this charge.
>
> (2) Appellant's trial counsel was ineffective for not preparing a defense and for [failing] to offer any evidence on behalf of the Appellant.
>
> (3) [Appellant's trial counsel was ineffective for failing] to suppress photos, in photo line-up and object because photos were highly prejudicial.
>
> (4) [Trial counsel was ineffective for failing] to object to the solicitor's continuous bolstering and vouching and pitting of the alleged victim ....
>
> (5) [Trial counsel was ineffective for failing] to object and show evidence that the alleged victim was not a credible witness.

---

[2]*Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

(6)     [Trial counsel was ineffective for failing] to object to [the] fingerprint and analysis of fracture.

(7)     Trial counsel and [the] State withheld valuable evidence.

(8)     Newly discovered evidence.

(9)     Conclusion of trial counsel's ineffective assistance and prejudicial error.

(10)     Appellant's trial counsel was ineffective for [failing] to object to and preserve these issues for appeal and any other issues that may have been affected by the Appellant's counsel's deficient performance.

(11)     The trial judge never ruled on the DNA evidence.

(12)     The Appellant's trial counsel was ineffective [for] not asserting and requesting that the trial judge instruct the jury and charge the law as it pertains to the charge of CSC third degree when the evidence specifically pointed to the fact the victim was mentally defective (retarded), and the State knew beforehand that the victim was retarded and the only evidence the State presented at trial was of the victim being slow mentally (retarded).

(13)     The Appellant submits that the DNA evidence was never entered into evidence, and will prove that the Appellant is not guilty [of] the offenses that he was charged with.

The South Carolina Court of Appeals filed an order denying certiorari and granting counsel's petition to be relieved on May 29, 2009.  It sent the remittitur to the Richland County Clerk of Court on June 16, 2009.


## UNDERLYING FACTS

The victim, M., was a minor when the crimes occurred.  She testified that she was living at the Cambridge House, a halfway house in Columbia, for treatment of a drug problem.  She candidly admitted having a history of mental illnesses for "most all of my life." Her mother placed her in foster care when she was nine.

On the evening of June 11, 2002, the victim and Virginia Rose ("Vee") took a bus to Richland Mall from the Cambridge House. They left the mall shortly before 9:00 to catch a bus home. In the parking lot they were approached by the petitioner. The victim had met him a few weeks before and she knew him as "Reverend J." The petitioner offered her and Rose a ride home, and they accepted. On the way home, the petitioner offered to help them and the Cambridge House with funds from his church.

Once they arrived home, Rose left the car but the victim stayed with the petitioner. The petitioner told the victim that he did not have the money with him, and he asked for permission to take her to get it. The victim testified that the director of the Cambridge House allowed her to go with the petitioner. The petitioner handed the victim a piece of paper with the phone number for the "Family World Center," and the victim put the paper in her back pocket.

The petitioner then drove with the victim to his home in the Spring Valley Trailer Park around 9:00 p.m. The victim testified that she went inside to get a drink of water. The petitioner then made advances toward her inside the trailer. She resisted him, and she told him to take her home before curfew. However, he refused to do. Instead, the petitioner took off his pants and told her to touch his penis. When the victim tried to get to the door, the petitioner grabbed her and threw her onto the couch. He told the victim she was not leaving until she "gave him what he wanted." Then, the petitioner kissed the victim's stomach and forced his fingers into her vagina. He told the victim, "I need you to . . . jack me off." The victim wiped the petitioner's semen on her pants.[3] The victim had several bruises on her arms and back as a result of her struggle with the petitioner.

---

[3]The police were unable to detect any semen on the victim's pants (App. 339-40, 378-80).

After sexually assaulting the victim, the petitioner drove her back to the Cambridge House around 10:45 p.m.  The victim told Rose about the assault and the police were contacted.

Virginia Rose testified at trial and corroborated the victim's story.  Rose said that she felt more comfortable about going along with the petitioner when she discovered he was a reverend.  She testified that the petitioner offered to help the Cambridge House with his church.  He also wrote down his information on a piece of paper when she went inside the Cambridge House to use the telephone.

Rose testified that she roomed with the victim, and that she was concerned when the victim did not come home.  When the victim finally returned, she had "the deer in the headlights look."  The victim then told her what happened.

Deputy Steven Dauway met with the victim about 45 minutes later.  He testified that she was "visibly shaken" and "crying."  She reported the assault to Dauway, and she gave Dauway a description of her assailant and his car.  She also handed over the piece of paper given to her by the petitioner.

The victim drove the police to the location of the assault a few days later.  As a result of the victim's information, the police prepared a photographic line-up.  On June 19, the victim positively identified the petitioner as her assailant.

An arrest warrant was served on the petitioner on June 20, and the police received consent to search the trailer.  The police seized a daytimer.  The evidence showed that the note (State's Exhibit 19) was torn from the daytimer, and the petitioner's fingerprints were found on State's Exhibit 19.  The church and the telephone number written by the petitioner on State's Exhibit 19 were fictitious.

After his arrest, the petitioner agreed to give a written statement to the police.  He told the police that he worked from about 7:30 p.m. on June 11 until 6:00 a.m. the next morning.  He claimed that he did not go to Richland Mall, and he denied giving the victim

and Rose a ride or sexually assaulting the victim in his trailer. However, the petitioner's employer testified that he did not work that evening.

The petitioner's probation agent also testified that the petitioner received electronic monitoring for a prior crime. Stacey Bartkovich said that her records for June 11 indicated that the petitioner had left his home at 7:36 that evening, and he returned at 9:32 p.m. He left again at 10:11 p.m., and he returned shortly after midnight.

## HABEAS ALLEGATIONS

The petitioner raises the following allegations in his *pro se* petition for relief:

**GROUND ONE:** Petitioner was deprived of effective assistance of counsel in violation of his Sixth Amendment right.
**SUPPORTING FACTS:** Petitioner has fourteen (14) issues of ineffective assistance of counsel. Thirteen (13) issues are attached to this application. (1) Counsel's failure to object to the reconstructive amendment of the indictment during trial, where the State introduced different methods of sexual battery and were not in the indictment was highly prejudicial. Thirteen (13) additional issues is submitted with this application as an attachment (see attachment).

**GROUND TWO**: Actual innocence (new evidence).
**SUPPORTING FACTS**: Petitioner asserts there is no physical nor forensic evidence to support either conviction. Petitioner has been tested four different times for D.N.A. evidence that were "NEGATIVE". The alleged victim's own sister has contacted Aileen Clare (Appellate attorney) and written me a letter about her sister's "history" of falsely accusing innocent people including myself. The "LETTER" is submitted as an attachment (See Attachment).

On July 21, 2009, the respondent filed a motion for summary judgment. By order filed August 3, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his

8

opposition to the motion on August 24, 2009, and a motion for evidentiary hearing on October 7, 2009.

## APPLICABLE LAW AND ANALYSIS

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from

9

the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id*. When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).


### Ineffective Assistance of Counsel (Ground One)

The petitioner's ground one raises 14 separate allegations of ineffective assistance of counsel. The petitioner listed his first allegation in his habeas petition, and he listed 13 additional allegations in an attachment to his petition (docket no. 1-3). While the respondent acknowledges that the petitioner has raised 14 separate allegations of ineffective assistance of counsel (resp. m.s.j. 11), the respondent has addressed in the motion for summary judgment only the one allegation presented in the petition and the first three allegations presented in the attachment to the petition. The respondent did not address the following allegations:

> (4)     [Trial counsel was ineffective for failing] to object to the solicitor's continuous bolstering and vouching and pitting of the alleged victim ....

> (5)     [Trial counsel was ineffective for failing] to object and show evidence that the alleged victim was not a credible witness.

> (6)     [Trial counsel was ineffective for failing] to object to [the] fingerprint and analysis of fracture.

> (7)     Trial counsel and [the] State withheld valuable evidence.

(8)    Newly discovered evidence.

(9)    Conclusion of trial counsel's ineffective assistance and prejudicial error.

(10)    Appellant's trial counsel was ineffective for [failing] to object to and preserve these issues for appeal and any other issues that may have been affected by the Appellant's counsel's deficient performance.

(11)    The trial judge never ruled on the DNA evidence.

(12)    The Appellant's trial counsel was ineffective [for] not asserting and requesting that the trial judge instruct the jury and charge the law as it pertains to the charge of CSC third degree when the evidence specifically pointed to the fact the victim was mentally defective (retarded), and the State knew beforehand that the victim was retarded and the only evidence the State presented at trial was of the victim being slow mentally (retarded).

(13)    The Appellant submits that the DNA evidence was never entered into evidence, and will prove that the Appellant is not guilty [of] the offenses that he was charged with.

(Doc. nos. 1-3). The PCR court addressed a number of these allegations on the merits (App. 611-614), and these allegations are identical to those presented by the petitioner in the "Petitioner's Pro Se Brief for Writ of Certiorari," in response to the *Johnson* petition. This court will address below those claims briefed by the respondent. This court recommends that the respondent be given an opportunity to file a dispositive motion as to the remaining ineffective assistance of counsel claims.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

**Failure to Object to Constructive Amendment of CSC Indictment**
**Failure to Object to Improper Wording of CSC Indictment**

The petitioner first alleges that counsel was ineffective because he did not object to the "constructive amendment" of the CSC indictment during trial. The petitioner also alleges that counsel was ineffective for failing to object to the improper wording of the CSC indictment. These allegations fail on the merits.

The record reflects that the first degree CSC indictment alleged:

> Jerome Myers, did in Richland County on or about June 11, 2002, engage in sexual battery, to wit: the defendant digitally penetrated the victim's vagina upon and with the body of [the victim], without her consent. Such sexual battery was accomplished by the use of force of a high and aggravated nature, to wit: while being kidnaped.

(App. 629-30). The trial judge instructed the jury that the petitioner was only guilty if the jury found beyond a reasonable doubt that the victim had "submitted to [a] sexual battery while the victim was also the victim of forcible confinement or kidnaping" (App. 446-47; *see also* 445-46) (defining the offense of kidnaping). Following this charge, the State asked the trial judge why he had not charged the jury that it could convict petitioner if it found that the sexual battery was accompanied by force of a high and aggravated nature, and why he charged jurors that they could acquit of CSC in the first degree if they did not find that the victim had been kidnaped. The trial judge explained that he did not charge on force because kidnaping was the only factor of aggravated force alleged in the indictment. The

State acquiesced in his ruling and did not move to amend the indictment, although it noted that the indictment was poorly drawn and "worded improperly" (App. 454-56).

At the PCR hearing, the petitioner testified that counsel should have objected to the indictment because, as he understood the above discussion at trial between the assistant solicitor and the trial judge, the indictment charged him with ABHAN and not CSC in the first degree. He claimed that this prejudiced him because he was unable to advance in his custody level as the result of his first degree CSC conviction, and it affected the percentage of time he had to serve before becoming parole eligible (App. 529-31, 534). Trial counsel testified that he had reviewed the indictment and that he did not think there was anything wrong with it. He then explained:

> I think there were sort of two issues being blended with the indictment that Mr. Myers is talking about. Maybe I can explain it a little bit.
>
> The indictment reads: After alleging he committed a sexual battery, it says such sexual battery was accomplished by the use of force of a high and aggravated nature, to wit, while being kidnaped. So the aggravating factor to make criminal sexual conduct first degree was the kidnaping.
>
> And there was an exchange between the Solicitor and the judge. At one point, I think Mr. Myers referred to, the judge -- the Solicitor was asking to allege force as an aggravating factor in addition to kidnaping.
>
> And the judge said, no, you have put in, to wit, while being kidnaped, so your aggravating factor is kidnaping. And he limited the State to that aggravating factor.
>
> And I didn't object to that because I didn't want any other aggravating factors. That was actually a benefit to our case to have at least it limited to one aggravating factor. If I had objected to the wording of the indictment, that would have just made an additional aggravating factor for the jury to consider, which I didn't want that.

(App. 551-52).

13

Counsel then restated that he felt that the wording of the indictment benefitted the petitioner because the jury could only convict the petitioner of first degree CSC. Further, any objection or argument by counsel could have resulted in the amendment of the indictment to allege an additional aggravating factor, which counsel did not want. If he had moved before trial to quash the indictment, this would have merely delayed the trial because the assistant solicitor could have sought another indictment. Further, counsel and the petitioner were aware that he would be tried for CSC in the first degree, and the elements of that offense were adequately set forth in the indictment (App. 552-54).

The PCR judge rejected this allegation in the Partial Order of Dismissal, as follows:

> As to the allegation of ineffective assistance of counsel in that counsel failed to object to the wording of the indictment, this Court finds this claim is without merit. Defects in the indictment do not affect subject matter jurisdiction. *See State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005); *See also U.S. v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781 (2002). The indictment is a notice document, and any challenges to its sufficiency must be made in accordance with S.C. Code Ann. § 17-19-90 (2003). *See also* S.C. Code § 17-19-20 (2003). A review of the indictment shows that the language of the indictment is sufficient to place the Applicant on notice of what charges he was called upon to answer for. Accordingly, this allegation is denied and dismissed.

(App. 611).

The allegations regarding the CSC indictment are not cognizable in federal habeas corpus. Federal habeas is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1989). A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus. *See Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (citing *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976)). *See*

14

*also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."); *Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985) (deficiencies in state court indictments are not ordinarily the basis for habeas relief unless deficiency made trial fundamentally unfair as to amount to a deprivation of the defendant's right to due process). There is no indication here that any alleged defect in the indictment made the petitioner's trial so fundamentally unfair as to amount to a deprivation of his right to due process.

The petitioner's first allegation fails because there is no evidence that the indictment was constructively amended at trial. Following the discourse between the trial judge and the State as to what the indictment alleged, both the State and defense counsel acquiesced to the plain reading of the indictment (App. 454-56).

Furthermore, contrary to the petitioner's allegation and PCR testimony, the indictment properly charged him with the offense of CSC in the first degree. The CSC statute provides:

> (1) A person is guilty of criminal sexual conduct in the first degree if the actor engages in sexual battery with the victim and if any one or more of the following circumstances are proven:
>> (a) The actor uses aggravated force to accomplish sexual battery.
>> (b) The victim submits to sexual battery by the actor under circumstances where the victim is also the victim of forcible confinement, kidnaping, robbery, extortion, burglary, housebreaking, or any other similar offense or act.
>> (c) The actor causes the victim, without the victim's consent, to become mentally incapacitated or physically helpless by administering, distributing, dispensing, delivering, or causing to be administered, distributed, dispensed, or delivered a controlled substance, a controlled substance analogue, or any intoxicating substance.

S.C. Code Ann. § 16-3-652(1) (Supp. 2009). Thus, the petitioner's indictment (App. 629-30) correctly charged him with the offense for which he was tried and convicted.

15

Also, trial counsel's testimony demonstrated that he and the petitioner were on notice of this offense. *See In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense ... are basic in our system of jurisprudence...."). The only "problem" with the indictment was the deficiency noted at trial: the State had intended to charge aggravated force as a circumstance of aggravation, but the indictment did not allege any circumstance other than kidnaping. As a result, an objection would have been meritless, and counsel was not deficient in failing to raise an objection that had no chance of prevailing. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir.2000) ("counsel cannot be ineffective for failing to raise a meritless claim").

Further, trial counsel made a reasonable strategic decision not to object. Counsel testified that if he had objected, an additional aggravating factor could have been added for the jury to consider, which would have been to the petitioner's detriment (App. 551-52). Based upon the foregoing, the petitioner has failed to show that his trial counsel was deficient in failing to object to the wording of the CSC indictment. Further, he has failed to show that he suffered prejudice as a result.

Based upon the foregoing, these claims fail.


**Failure to Request Charge on ABHAN**

The petitioner testified at the PCR hearing that trial counsel was also ineffective for not either requesting that the trial judge instruct the jury on the lesser-included offense of ABHAN, or objecting to the failure to give the instruction. It was his understanding that the charge should have been given after "both the trial judge and the Solicitor had ... agreed that the elements in the indictment w[ere] improper[ly] worded and defect[ive], and that the elements ... [alleged the crime of] ABHAN and not sexual criminal conduct first degree." He claimed that an ABHAN instruction was supported by the record

because there was no penetration (App. 531-35).  On the other hand, trial counsel testified

that an ABHAN instruction was inconsistent with the petitioner's defense that he did not

commit the crimes.

> Our defense was it either happened or it didn't happen. And Mr.
> Myers said on the stand today, and he would always argue to
> me that he never met this girl, this -- none of this ever
> happened. So it was sort of an all-or-nothing strategy. Either he
> ... did it or he didn't do it, but there was no in between.

(App. 554-55).

The PCR judge rejected this allegation in the Partial Order of Dismissal,

finding the allegation lacked merit.

> It is well established that the facts must support a jury
> instruction for it to be proper. *State v. Crosby*, 355 S.C. 47, 584
> S.E.2d 110 (S.C. 2003).  Applicant's defense was that he did
> not do this crime. Applicant's defense was not that he assaulted
> the victim only not sexually, his defense was misidentification.
> A lesser-included offense charge was not supported here.
> Accordingly, this allegation is denied and dismissed.

(App. 614).  This was the only question presented in the *Johnson* petition.

The allegation fails on the merits.  Again, the petitioner cannot show either

deficient performance by counsel or resulting prejudice under *Strickland*.  As a matter of

South Carolina law, ABHAN is a lesser-included offense of CSC.  *State v. Primus*, 564

S.E.2d 103, 106 (S.C. 2002), *overruled on other grounds by State v. Gentry*, 610 S.E.2d

494 (S.C. 2005).  A trial judge "must charge a lesser included offense if there is evidence

from which it could be inferred that the defendant committed the lesser rather than the

greater offense." *Brightman v. State*, 520 S.E.2d 614, 615 (S.C. 1999).

Here, trial counsel articulated a strategic reason for not objecting that was

objectively reasonable under *Strickland*: an ABHAN instruction was inconsistent with the

petitioner's defense that he did not commit the crimes.  Counsel is not required to ask for

lesser-included offense instructions when to give them would conflict with the theory of the

defense. *See Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir. 1997); *see also Kubat v. Thieret*, 867 F.2d 351, 365 (7th Cir. 1989).

Additionally, there was no evidence that the petitioner was guilty only of ABHAN or any other lesser-offense, as opposed to CSC in the first degree. The petitioner's defense was predicated upon misidentification, not a lesser offense. Also, the only evidence presented was that the petitioner drove with the victim to his home in the Spring Valley Trailer Park around 9:00 p.m. on the pretext of helping her and the halfway house where she lived (App. 153-54). The victim testified that she went inside to get a drink of water (App. 156-58). The petitioner made advances toward her inside the trailer. However, she resisted him, and she told him to take her home before curfew. He refused to do and, instead, took off his pants and told her to touch his penis. When the victim tried to get to the door, the petitioner grabbed her and threw her onto the couch. The petitioner told the victim she was not leaving until she "gave him what he wanted." Then, the petitioner kissed her stomach and he forced his fingers into her vagina. The petitioner told the victim, "I need you to . . . jack me off." The victim wiped his semen on her pants (App. 161-66, 197). The victim had several bruises on her arms and back as a result of her struggle with the petitioner (App. 167-68, 352).

Evidence that a physical fight occurred, instead of rape, warrants a charge of ABHAN, as a lesser-included offense of CSC. *State v. Pressley*, 354 S.E.2d 777, 777-78 (S.C. 1987). In *Pressley*, the victim was the defendant's 14-year-old daughter. She testified that the defendant jumped on her, put his hands around her throat, straddled her, slapped her, and then raped her. *Id*. at 777. The defendant in *Pressley*, on the other hand, testified that he and his daughter argued, he slapped her, shook her, and when she tried to get away, he grabbed for her, tearing off her clothes. *Id.* The court held that because the defendant's testimony, if believed, would establish that he was guilty of only the lesser-included offense, the trial judge should have charged the jury on ABHAN. *Id.* at 778.

18

In the present case, however, the victim did testify to penetration, and there was no testimony from the petitioner to contradict this. Based upon the foregoing, the petitioner failed to show that his trial counsel was deficient in this regard and that he suffered prejudice as a result. Accordingly, this claim fails.

**Failure to Prepare a Defense and Offer any Evidence on Petitioner's Behalf**

The petitioner next alleges that trial counsel was ineffective for not preparing a defense and for failing to offer any evidence on behalf. The petitioner testified at the PCR hearing that counsel only met with him twice before trial for a total of approximately 30 minutes. Although the petitioner gave him a witness list, counsel did not subpoena any of those witnesses. The petitioner testified that the witnesses (his fiancee and his son's mother) "could testify to my credibility and my whereabouts." The petitioner claimed that counsel also failed to subpoena the records for the petitioner's rental car, or receipts from places that he had allegedly gone on the night of the offenses, which he maintained "could [have] corroborate[d]" that he was elsewhere at the time "that the victim said that she was kidnapped and raped." The petitioner further complained because counsel "did not do an investigation of the crime scene" and "did not go ... to the house to investigate the arrangement of the furniture" (App. 535-38). The petitioner further complains that counsel rested his case without presenting any witnesses. He maintained that he had told the trial judge that he did not want to testify because counsel had assured him that the DNA expert and his witnesses would testify. Instead, counsel did not present any witnesses (App. 538-39. *See also* App. 333, 385).

Trial counsel recalled events differently. At the PCR hearing, when asked if he and the petitioner had discussed potential witnesses, he explained:

> We did. I believe he had some character witnesses. He did give me some -- I think I remember him giving me some receipts. There was no alibi defense. If there was an alibi defense, I

19

would have put up an alibi. Any witnesses he gave were maybe character witnesses. He was -- I believe he was a preacher, so he had some people that he went to church with that were character references for him.

My strategy was to not put up a defense. I had gotten what I thought I needed to make my argument from the victim. The victim admitted that she had mental illness. And she basically said on the stand that she had mental illness, she took medications, that she was mentally retarded. And I got all the information I needed from her.

I discussed with Mr. Myers, he didn't want to take the stand, so I was trying to get the last closing argument. And there was no witness I had that I felt would make any difference and it would cause me to lose the last closing argument.

(App. 555-56). He then reiterated that he made a strategic decision to retain the last closing argument.

The PCR judge found that trial counsel's performance was not deficient because he had made a reasonable strategic decision not to present a defense:

Counsel testified that Applicant always maintained that he had not done anything to the victim. Counsel testified that his defense was that Applicant did not do the crime. Counsel testified that credibility was the primary issue in the case and that he felt it best to attack the State's case through cross-examination of their witnesses and through strong closing argument. Counsel testified that he discussed whether Applicant should testify and chose not to put Applicant on the stand in order to preserve the last argument. The record reflects that Applicant made numerous pretrial motions in furtherance of his defense, despite those motions being unsuccessful. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Whitehead v. State*, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also Dempsey v. State*, 363 S.C. 365, 610 S.E.2d 812 (2005) and *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). Counsel articulated valid reasons for his choices in trial. Accordingly, this allegation is denied and dismissed.

(App. 611-12).

The petitioner is not entitled to relief on this ground. The petitioner had steadfastly denied his guilt. However, trial counsel had consulted with the petitioner about his right to testify, and the petitioner said that he did not want to testify. Also, there was not an alibi defense available, and the witnesses that the petitioner provided were character witnesses. Counsel felt that he had already undermined the victim's credibility on his cross-examination of her. Further, he specifically testified that "there was no witness I had that I felt would make any difference and it would cause me to lose the last closing argument," which he wanted as a matter of trial strategy. Thus, he made the decision not to present a defense and thereby retain the right to final closing argument, which is a "substantial right" in South Carolina. *See State v. Mouzon,* 485 S.E.2d 918, 921 (S.C. 1997) ("[T]he right to open and close the argument to the jury has been described as 'a substantial right, the denial of which is reversible error'") (quoting *State v. Rodgers*, 235 S.E.2d 808, 809 (S.C. 1977))*.*

As argued by the respondent, under these circumstances, trial counsel's performance was not deficient under *Strickland*. There is also no Sixth Amendment prejudice because the petitioner did not offer any of the witnesses or physical evidence that counsel supposedly should have presented at trial. *See e.g., Beaver v. Thompson*, 93 F.3d 1186, 1195 (4ᵗʰ Cir. 1996) ("However, an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4ᵗʰ Cir. 1990) (petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony). South Carolina also follows this rule. *See Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1999) ("'The applicant's mere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.'") (quoting *Glover v. State*, 458 S.E.2d 538, 540 (S.C. 1995)).

Based upon the foregoing, the claim fails.

**Failure to Suppress Photos in Photo Line-up
and Object to Photos as Highly Prejudicial**

The petitioner next alleges that trial counsel was ineffective for failing to suppress photographs used in a photo line-up and for failing to object because the photographs were highly prejudicial. At the PCR hearing, the petitioner's trial counsel testified that there was a *Neil v. Biggers*, 409 U.S. 188 (1972), hearing prior to trial, and he moved to exclude the identification from the photo line-up, but the trial court denied the motion (App. 559; *see* App. 35-73). As for the admission of the photo line-up itself into evidence, the trial judge left that issue open following the hearing (App. 74-75). The next day, prior to the start of trial, the petitioner's trial counsel indicated to the trial judge that, based upon his trial strategy, he would not oppose the admission of the photographs into evidence (App. 78). During the direct examination of the victim at trial, the State questioned the victim about her identification of the petitioner in the photo line-up. The prosecutor showed the victim and the investigator the photo line-up, which had been marked for identification, and she also questioned these witnesses about the line-up, but it does not appear that the photographs were actually entered into evidence (App. 4, 178-79, 343-45).

The PCR court considered the issue and found as follows:

> As to the allegation of ineffective assistance of counsel in that counsel failed to suppress the photo identification as prejudicial, this claim is without merit. Counsel requested a hearing pursuant to *Neil v. Biggers*, 409 U.S. 188 (1972). A hearing was held at which time counsel argued that the identification was flawed based on several factors. Counsel adequately cross-examined the State's witnesses and mounted a strong attack of the photo identification. The presiding judge admitted the identification, and counsel could not have done anything in addition to what he did to prevent the admission of the identification. Accordingly, this allegation is denied and dismissed.

(App. 612).

This ground fails on the merits. The petitioner's trial counsel vigorously opposed the victim's identification of the petitioner from the photo line-up in the *Neil v. Biggers* hearing. As found by the PCR court, he did all that he could do to prevent the admission of the identification. Accordingly, his performance was not deficient in this regard. Furthermore, as to the admission of the photographs themselves, the record shows that trial counsel did not oppose the admission of the photographs based upon his trial strategy. The petitioner's entire defense rested on misidentification (App. 614). Furthermore, the petitioner cannot show prejudice from his counsel's alleged error, because it does not appear that the State ever entered the photographs into evidence. Based upon the foregoing, this claim fails.

### *Actual Innocence (Ground Two)*

In ground two, the petitioner raises a free-standing claim of actual innocence based upon the supposed lack of physical or forensic evidence to support either conviction as well as his after-discovered evidence allegation pursued in state PCR - i.e., that the victim's sister wrote him (App. 577-79) and informed him that the victim had previously made false reports of sexual assaults.

The PCR court considered the issue regarding the letter and stated as follows in the Partial Order of Dismissal:

> As to the allegation of newly-discovered evidence, Applicant presented a letter purported to be from the sister of the victim. This Court finds that this issue must be continued for Applicant to have the opportunity to present evidence to support this claim. All other issues are denied and dismissed. The only issue remaining for review is the issue of newly-discovered evidence.

(App. 614). Accordingly, an evidentiary hearing into the issue was convened on June 7, 2007. The petitioner "was given the opportunity to present the testimony of the victim's

sister to authenticate the letter"; however, he did not do so (App. 600-601, 619).  The PCR court considered the issue and found as follows:

> Here, the Applicant presented a letter from someone claiming to be the sister of the victim in this case.  The Applicant was given the opportunity to locate the author of the letter to lay the foundation for the letter and authenticate the letter.  The Applicant was unable to do so.  This court finds that the letter, by itself, would not be admissible at a new trial as it is clearly hearsay.  Additionally, the letter is being offered for its impeachment value to question the character of the victim.  Clearly, the Applicant has failed to meet his burden of proving newly discovered evidence in this case.  Accordingly, the remaining allegation is denied and dismissed with prejudice.

(App. 620).

The Supreme Court in *Herrera v. Collins*, 506 U.S. 390, 400 (1993), noted: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  No such independent constitutional violation has been shown here.  To the extent the petitioner is raising the issue as an ineffective assistance of appellate counsel claim (pet. resp. m.s.j. 8), alleging that appellate counsel should have raised the issue on direct appeal, the petitioner has failed to show either deficient performance or prejudice.  The petitioner had an opportunity to locate the alleged author of the letter and present her at an evidentiary hearing convened for that sole purpose.  The petitioner failed to do so.

Further, as to the petitioner's claim regarding the alleged lack of evidence to support his convictions, "'[t]hough claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'"  *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (citing *Wright v. West*, 505 U.S. 277, 296 (1992)).  "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the State's system of direct

appellate review." *Id.* at 405-06 (citing *Wright*, 505 U.S. at 292). Therefore, a defendant is entitled to review only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted); *George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996). Here, the petitioner has made no such showing. Based upon the foregoing, this claim also fails.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (docket no. 16) be granted as to the grounds addressed herein. As the respondent did not address in the motion for summary judgment all of the ineffective assistance of counsel grounds alleged by the petitioner, dismissal of the petition is not recommended at this time. This court recommends that the respondent be given an opportunity to file a dispositive motion as to those remaining issues.

s/William M. Catoe
United States Magistrate Judge

February 10, 2010

Greenville, South Carolina